# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WINDY R. GILLIS-KIHUMBA,**

     **Plaintiff,**

-vs-            **Case No.  6:14-cv-2053-Orl-41DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

     **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

   The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

   The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda[1] submitted by the parties in this case.  Oral argument has not been requested.

   For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

## I.   BACKGROUND

###   A.  Procedural History

---

[1]Although the Court's Scheduling Order requested that the parties "file their memoranda in Portable Document Format (PDF) converted directly from a word processor" because "[t]he filing of scanned documents is less useful and, therefore, disfavored," Plaintiff's memorandum (Doc. No. 16), as submitted, for some reason, contains some "renderable" text, which is less useful for analysis and retrieval by the Court.

Plaintiff filed for a period of disability and disability insurance benefits on July 20, 2011 and for SSI benefits on June 12, 2012. R. 13, 117-25. She alleged an onset of disability on September 30, 2010, due to (asymptomatic) human immunodeficiency virus ("HIV"), thyroid problems, anxiety, depression, fibroids in stomach, bleeding, mass in heart, heart murmur, Parkinson's disease, a mood disorder, and problems with her eyesight including burred vision. R. 58-59, 162, 193. Her application was denied initially and upon reconsideration. R. 60-64, 17-75. Plaintiff requested a hearing, which was held on March 1, 2013, before Administrative Law Judge Gregory J. Froehlich (hereinafter referred to as "ALJ"). R. 30-57. In a decision dated May 2, 2013, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 10-21. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on November 21, 2014. R. 1-6. Plaintiff filed this action for judicial review on December 15, 2014. Doc. 1.

**B.    Medical History and Findings Summary**

Plaintiff was born on June 3, 1965, was 45 years old on the alleged onset date, and was 47 at the time of the decision. R. 20. She has a high school education and past relevant work as a retail sales clerk, automobile rental agent, nurse assistant, and psychiatric aide[2]. R. 20.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of thyroid problems, anxiety, depression, fibroids in stomach, bleeding, mass in heart, heart murmur, HIV, blurred vision, and Parkinson's disease. R. 162. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from HIV, bipolar disorder, asthma, schizophrenia, borderline intellectual functioning, and anxiety disorder, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 15-16.

---

[2]Plaintiff erroneously states in the Memorandum that her past work included assembler of small parts, mail sorter, and warehouse checker (Doc. 16 at 2). *See* R. 20-21.

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, except she should avoid concentrated exposure to heat or cold, respiratory irritants such as dust, fumes, or gases, and wetness/humidity, and she is limited to performing simple, routine, repetitive tasks; can relate adequately with coworkers and supervisors, but should only have occasional contact with the general public, and changes in the workplace should be infrequent and gradually introduced. R. 18. Based upon Plaintiff's RFC, the ALJ determined that she could not perform her past relevant work. R. 20. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as an assembler of small parts, mail sorter, and warehouse checker. R. 21. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 21.

Plaintiff now asserts two points of error. First, she argues that the ALJ erred by failing to state the weight he gave to the opinion of a nurse practitioner. Second, she asserts the Appeals Council erred by denying review despite the opinion of a vocational expert submitted after the ALJ decision. For the reasons that follow, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

## II.      STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely

create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

# III.    ISSUES AND ANALYSIS

## A.    Residual Functional Capacity and the nurse practitioner's opinion

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997).  Plaintiff contends that the ALJ failed to properly state the weight–acceptance or rejection– that he gave the opinions and diagnosis from a nurse practitioner with the initials "L.P.," who opined in 2011 that Plaintiff suffered from major depression with psychosis, with psycho-social stressors, with symptoms of anxiousness, agitation, constricted affect, depressed mood, reported hallucinations, and delusions; at some but not all visits cited by Plaintiff, L.P. also listed "schizoaffective disorder"[3] in 2012.  Doc. 16 at 13-15 (citing R. 428, 573, 654, 799-808).  Plaintiff contends that the nurse practitioner's opinions supported a finding of disability, and the ALJ's failure to include the disabling limitations from the nurse practitioner's opinions–and the ALJ's inclusion of less severe "moderate" mental limitations–in the RFC and the hypothetical to the VE, resulted in the erroneous determination that Plaintiff was not disabled.  Doc. 19.

The Commissioner argues that opinions from nurses, like L.P., and other non-acceptable medical sources are not "medical opinions" like those of treating physicians; they are not entitled to any special significance or consideration and cannot establish the existence of a medically determinable impairment, although an ALJ can use evidence from nurses to determine the severity of a claimant's impairments and how the claimant's impairments affects the claimant's ability to work.   Doc. 17 at 8 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); SSR 06-3p). The Commissioner points to the Social Security regulations which specifically define "acceptable medical

---

[3]Plaintiff argued in her brief that L.P. opined she had "schizophrenia" but the actual diagnosis opinion, added in December 2011, is "Schizoaffective Disorder" as a secondary diagnosis. R. 654. Schizoaffective Disorder is defined as "having an admixture of symptoms, suggestive of both schizophrenia and affective (mood) disorder. STEDMAN'S MEDICAL DICTIONARY (28th ed. 2006).

sources" to include "licensed physicians and psychologists" whose opinions can establish the existence of a medical impairment; sources such as nurses are considered "other" medical sources. *See* 20 C.F.R. §§ 404.1502, 404.1513(a)&(d), 416.902, 416.913(a)&(d). The Commissioner argues that the administrative law judges generally are not required to articulate specific reasons for discounting opinions from nurses or other sources who are not acceptable medical sources. Doc. 17 at 8 (citing 20 C.F.R. §§ 404.1527, 416.927; SSR 06-3p). The Commissioner further argues that the diagnosis, standing alone, of schizophrenia or psychosocial stressors does not establish disabling limitations because "the mere existence of these impairments does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's determination in that regard." Doc. 17 at 10 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) and *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) ("Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself")). The Commissioner's summary of the weight to be given a nurse-practitioner's opinions accurately reflects the guidance in the Social Security regulations.

The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings

-6-

and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  A nurse practitioner is considered an "other source" and evidence from such "other sources" may be used to show the severity of Plaintiff's impairments and how it affects her ability to work. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d) (listing examples of "other sources" to include, *e.g.*, nurse-practitioners, physicians' assistants, chiropractors, and therapists).

In arguing that the nurse practitioner's opinion should have been given more weight in her case, Plaintiff cites *King v. Astrue*, 493 F.Supp.2d 1232 (S.D. Ala. 2007) and *Jackson v. Astrue,* 2007 WL 2428815, *5 (M.D. Fla. Aug. 17, 2007)[4] for the proposition that nurse practitioners "are acceptable sources to show the severity of [a claimant's] impairments" and their opinions "must" be addressed.  Plaintiff also cites SSR 06-03, arguing that, although nurse practitioners are not classified as "acceptable medical sources," they are still important medical sources and the ALJ is still required to evaluate them.  Doc. 16 at 14.

Plaintiff's reliance on *King* and *Jackson* is misplaced because, in both cases, the claimant's records contained the opinions or treatment notes of not just a nurse practitioner, but were signed by a supervising physician (*King*) or substantiated by a psychologist performing a consultative examination (*Jackson*) that the ALJ either failed to acknowledge or ignored completely.  *King*, 493 F.Supp.2d at 1234; *Jackson*, 2007 WL 2428815 at *5.  In this case, the nurse practitioner's opinions were not reviewed or signed by a supervising psychologist or substantiated by a consultative psychologist's opinions, and in fact, were contradicted by the consultative psychologist's and physician's opinions.  *See, e.g.*, R. 654; 332-335 (Dr. Graham's Evaluation); R.  355-56 (Dr. Shoemaker's examination).

_____

[4] *Jackson* was decided in 2007, before the Eleventh Circuit's decision in *Winschel v. Commissioner*, 631 F.3d 1176, 1179 (11th Cir. 2011), which held that ALJ must discuss the weight given to a treating physician's opinion in the record.

Plaintiff concedes that "the ALJ did mention some of the exhibits that happened to contain a few of [the nurse practitioner's] opinions," but contends that the ALJ focused on other parts of these records that seemed to support less severe limitations and RFC, and to discount the severity of Plaintiff's testimony about her limitations.  Doc. 16 at 15 (citing R. 19). The ALJ found:

> As for the claimant's anxiety, depression, and tendency to isolate herself, the record does not corroborate the alleged severity of her symptoms. She testified that she has no friends, never goes out to the movies or church or with other people, has no boyfriend, and has three panic attacks per week. However, treatment records note that she was doing well with medication (Exhibit 26F) and had no complaints (Exhibit 44F) at one point when compliant with her psychotropic medications. As for her testimony that she has auditory and visual hallucinations all of the time to hurt herself, it was simply not credible as it is not supported by the treatment records, which contain only one notation of intentions to harm herself with a knife. She testified that she does not shop, help with household chores, drive, eat, sleep, etc. Her testimony that she does not do things essential to survival is simply not believable and diminish her credibility. She attends doctors' appointments, watches television, visits with her daughter, etc., suggesting a higher level of functioning than alleged. (Exhibits 19F, 21F, 3 IF, 44F) Her low GAF scores were due to state at the time of her Baker Act[5] (Exhibit 20F) and increased with appropriate treatment. Her mental status examination in July 2011 was essentially normal with the exception of some residual depression and anxiety. (Exhibits 20F, 31F). In any event, I have accounted for her mental impairments in the RFC above and the B criteria findings above are consistent with prior State Agency physicians' findings at Exhibits 15F and 16F.
> * * *
> The claimant's mother's testimony that the claimant is not mentally stable is again not corroborated by the treatment records or her mother's later testimony that her treatment has helped. She testified that the claimant has no resources for medications. However, there is no indication in the record that the claimant has been denied free or low cost medical care.

R. 19-20.  Specifically with regard to Plaintiff's mental impairments, the ALJ found Plaintiff did not meet the severity of any listed impairment in the SSR:

> Inactivities of daily living, the claimant has moderate restriction. Though the claimant has some difficulty with her activities of daily living, there is nothing in the record to suggest any more than moderate restrictions. She is able to attend doctor's appointments, prepare simple meals, travel to her daughter's house, etc.

---

[5] Plaintiff was committed under the Baker Act on March 20, 2011. R. 593.

In social functioning, the claimant has moderate difficulties. The claimant is able to get along with family and is able to communicate effectively in a socially appropriate manner as evidenced in treatment records.

With regard to concentration, persistence or pace, the claimant has mild difficulties. The claimant alleged difficulties in this functional area, but there is nothing in the record to support her allegations. Notations in treatment records note no more than mild difficulties in this functional area.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

R. 16.

Plaintiff was seen at Halifax Health Centers and also began treatment at Stewart-Marchman-ACT Behavioral Health ("ACT") in 2011 and continued treatment there every two to three months through November 2012, according to Halifax and ACT records. *See* R. 809.  However the notes with L.P.'s diagnosis are rather limited and the bulk of the notations are on a check-the-box form, although L.P. does list Plaintiff's report of hallucinations and that "the voices make me angry and irritable." *See, e.g,* 801, 808.  In August 2012, L.P. noted that "the [patient] has not been taking her meds as prescribed.  0 complaint of hallucinations, but still paranoid. 0 report of suicidal ideations at this time." R. 798.  Records from ACT in November 2012 report "0 complaints." R. 797.

Plaintiff also received regular treatment at the Halifax Health Center during 2011.  On the few notes taken by the physician treating Plaintiff for her mental impairments, signed by Dr. Stephanie Mossler, in May 2011, Plaintiff reported that two months after being Baker Acted on March 20, 2011 and diagnosed with Major Depressive Disorder (R. 593), she was feeling "much improved." R. 591.  Later in May 2011, Plaintiff again reported she was feeling "much better" and denied any suicidal ideations. R. 592. Plaintiff was assessed as stable. R. 592. On August 1, 2011, Plaintiff reported that feeling depressed because she was coping with the loss of a her sister and a family friend who was her daughter's godmother.  R. 587-88.  Two weeks later, on August 15, 2011, her depression was

noted to be "stable."  R. 586.  In December 2011 she reported feeling depressed but "she is coping."

R. 795.

In the consultative mental health examination, Dr. Malcolm Graham performed Psychological

Testing using the Wechsler Memory and Intelligence tests. R. 334.  He noted that Plaintiff "has no

marked areas of strength or weakness in either the verbal or performance areas," but "[o]verall, her

memory scores are significantly higher than what one would predict, considering her measured

intellectual ability.  The reasons for this are not known as she has a high school education and two

years of community college."  R. 335.  Dr. Graham diagnosed Plaintiff with "No diagnosis" and a

prognosis of "guarded to possibly good."  R. 335.  As for Plaintiff's functional ability, Dr. Graham

opined:

> During her evaluation, there were no problems noted in attention or concentration, and
> there were no problems noted in recent or remote memory, considering her level of
> intellectual functioning.
>
> On the Wechsler Adult Intelligence Scale-III, she is functioning in the mild range
> of mental retardation, but this is felt to be an under-estimate of her present level of
> functioning. Her performance on the Wechsler Memory Scale-III indicates that all
> of her index scores are within the borderline to average range. This is not
> commensurate with her obtained level of intellectual functioning, and there is no
> known reason to explain this.

R. 335.  Dr. Shoemaker, a family practice physician, also performed a consultative examination and

opined, as to Plaintiff's mental condition, that she had "major depression" and would benefit from a

thorough psychological evaluation though she had never seen a psychiatrist; he also noted at the time

that noncompliance "will make it very difficult for her to be effectively treated for the HIV infection"

because she had been without her medications for three months and it "had been a long time since

laboratory studies were last completed."  R. 355, 357.

To the extent that Plaintiff argues the ALJ erred in failing to discuss L.P.'s assignment of

Global Assessment of Functioning (GAF) scores of "50" to Plaintiff's condition, her argument is

without merit.  As explained above , the ALJ was not required to discuss L.P.'s treatment notes. Moreover, the Commissioner has declined to endorse GAF scores for use in the disability programs and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.. *See, e.g., Taylor v. Comm'r of Soc. Sec.*, No. 6:11-cv-1756-Orl-22DAB, 2012 WL 5363331, at \*5 (M.D. Fla. Oct. 10, 2012) (citing *Wind v. Barnhart*, 133 Fed. Appx. 684, 692 n. 5 (11th Cir. 2005)).

The ALJ properly evaluated the treatment records concerning Plaintiff's mental impairments and limitations, appropriately noting that her symptoms were reduced or non-existent when she was compliant her psychotropic medications. He also appropriately discounted her testimony regarding auditory and visual hallucinations because it was not supported by the treatment records.  As such, the ALJ's treatment of L.P.'s notes and his ultimate decision were based on substantial evidence.

### B.        Evidence submitted to the Appeals Council

Plaintiff asserts that the Appeals Council erred by denying review in spite of her submission of new vocational evidence from Flora Ann Pinder, a Certified Vocational Expert/Evaluator (R. 247-48) submitted on December 11, 2013, following the ALJ's denial of her claim on May 2, 2013.  The Commissioner argues that the Appeals Council properly denied review because there was no conflict between the DOT and the VE testimony presented at the hearing and Plaintiff failed to show that evidence submitted to the Appeals Council ("AC") affected the substantial evidence supporting the ALJ's decision that Plaintiff was not disabled.

When a plaintiff submits additional evidence to the Appeals Council and argues that the Appeals Council erred in denying review, the court must determine whether the Commissioner's decision is supported by substantial evidence on the record as whole.  *See Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1262, 1266 (11th Cir. 2007) (holding new evidence presented to

the Appeals Council should be considered) ; *Hummel v. Astrue*, No. 8:06-CV-725-T-EAJ, 2007 WL

2492460, *7 (M.D.Fla. Aug. 30, 2007) (under *Ingram*, the court reviews whether the decision to deny

benefits is supported by substantial evidence in the record as a whole, including evidence submitted

to the Appeals Council).

Plaintiff argues the Appeals Council erred in failing to follow the correct legal standards in

considering Dr. Pinder's vocational report.  She acknowledges that it was her burden to prove that she

was unable to perform the jobs suggested by the vocational expert, and she argues she carried her

burden of proving that she was unable to perform the three jobs suggested by the VE at the hearing

by providing the Appeals Council evidence from Dr. Pinder that the other VE's testimony given at

the hearing conflicted with the ALJ's hypothetical.

As discussed above, in giving Plaintiff "no diagnosis" of mental disorder, Dr. Graham noted

during Plaintiff's evaluation that she had no problems in attention or concentration and in recent or

remote memory, considering her level of intellectual functioning. R. 335.  Dr. Graham was skeptical

of Plaintiff's intelligence testing scores (of mild range of mental retardation) as "not commensurate

with her obtained level of intellectual functioning" because her memory scores were significantly

higher than a mildly retarded person since she had a high school education and two years of

community college. R. 335. The ALJ discounted the severity of Plaintiff's mental impairments, as

discussed above, but accounted for her mental impairments in the RFC by limiting her to "simple,

routine, repetitive tasks" in the RFC.  The ALJ then presented the following hypothetical:

> The first individual, an individual of the claimant's age, education, and past work
> experience; limited to work at the light exertional level. The individual should not
> have concentrated exposure to respiratory irritants, such as dust, fumes, and gases,
> wetness or humidity, and extremes of heat or cold. From a mental standpoint, they'd
> be limited to performing simple, routine, competitive tasks relating [inaudible] to
> coworkers and supervisors but limited to occasional general public contact. And the
> changes in the work place should be infrequent and gradually introduced. . . .  Would

there be other positions in the national economy that such an individual could perform?

R. 51-52.  The VE responded with three jobs within these restrictions from the DOT, which would be small parts assembler, mail sorter, and warehouse checker, all with an SVP of 2.  R. 52-53.  The VE also testified that there were not any conflicts between his testimony and the DOT.  R. 53.  The ALJ specifically determined that the vocational expert's testimony was consistent with the information contained in the DOT, and, based on the testimony of the VE, he concluded that Plaintiff was capable of making a successful adjustment to other work existing in significant numbers in the national economy.  R. 21.

Plaintiff argues that the AC erred in failing to grant review in light of Dr. Pinder's September 11, 2013 expert opinion that there was a conflict between the Dictionary of Occupational Titles ("DOT") and the testimony given by the VE present at the administrative hearing.  R. 247-49. Dr. Pinder noted that the ALJ limited Plaintiff to performing "simple, routine, repetitive tasks," and based on these limitations, Dr. Pinder opined that Plaintiff would be limited to performing only jobs at a Reasoning Level of One (1) which is defined by the DOT as the ability to "apply commonsense understanding to carry out simple one or two-step instructions" and to "deal with standardized situations with occasional or no variables in or from these situations encountered on the job." R. 247-53.  Yet, Plaintiff argues, the jobs cited by the vocational expert at the hearing had reasoning levels of two or three[6].  Doc. 16 at 12 (citing R. 247).  Dr. Pinder "concluded that there is a conflict between the Vocational Expert's testimony and the Dictionary of Occupational Titles." R. 248.

_____

[6]According to Dr. Pinder's Report, a Reasoning Level of Two (2) requires "applying commonsense understanding to carry out detailed, but uninvolved written or oral instructions; and deal with problems that involve concrete variables in or from standardized situations," and a Reasoning Level of Three (3) requires "dealing with problems involving several concrete variables in or from standardized situations in addition to other descriptions by the DOT." R. 248.

Plaintiff argues that the AC should have considered this new and material evidence, and granted review of the ALJ's decision.

The Commissioner argues Plaintiff failed to show that evidence submitted to the appeals council affected the substantial evidence supporting the ALJ's decision that Plaintiff was not disabled such that the AC should have granted review of the ALJ decision. The Appeals Council considered the additional evidence submitted by Plaintiff (R.2, 4), but denied review because it found no reason under its rules to review the ALJ's decision. R. 1-4. The Commissioner argues that the jobs identified by the VE have an SVP[7] level of 2 (assembler small parts, warehouse checker, and mail sorter)[8], and have not been found to be inconsistent with a finding that a claimant can perform "simple, routine, repetitive work" as the Eleventh Circuit found in *Hurtado v. Commissioner of Soc. Sec.*, 425 F. Appx. 793, 795-96 (11th Cir. 2011) and *Leigh v. Commissioner of Soc. Sec.*, 496 F. Appx. 973, 974-75 (11th Cir. 2012)[9].

In *Hurtado*, the Eleventh Circuit held that there was no apparent conflict between the VE's response that a claimant could perform work as an office helper, assembler, and ticket seller to the ALJ's hypothetical limiting her to "simple, routine, repetitive tasks" and the DOT provisions at issue. The court noted that although the claimant had certain mental impairments, she retained the ability to reason:

---

[7]The Commissioner also argues that all of the jobs identified by the VE have a specific vocational profile ("SVP") of 2 in the DOT, which the Commissioner considers to be unskilled work and therefore, are consistent with the limitation to simple tasks. Doc. 17 (citing DOT, § 706.684-022 (assembler small parts), § 209.687-026 (mail sorter), § 222.687-010 (warehouse checker); *Stollenwerk v. Astrue*, No. 2:11-cv-504, 2012 WL 2116118, at *6 (M.D. Fla. May 17, 2012) (finding ALJ properly determined claimant who could perform simple, routine, tasks was capable of unskilled work, corresponding to an SVP of 1-2); SSR 00-4p, 2000 WL 1898704, at *3 (S.S.A. Dec. 4, 2000)). However, Dr. Pinder's opinion specifically relates to "reasoning" not the SVP, thus, the Court discusses the level of reasoning.

[8]*See* DOT, § 706.684-022 (assembler small parts), § 209.687-026 (mail sorter), § 222.687-010 (warehouse checker).

[9]Unpublished opinions of the Eleventh Circuit constitute persuasive, and not binding, authority. *See* 11th Cir. R. 36-2 and I.O.P. 6.

But, while Hurtado allegedly suffers from memory and concentration problems, she has the ability to reason. Hurtado worked for 17 years as a teacher, she had a master's degree, and, a recent evaluation concluded that Hurtado had "intact and fairly well organized thought processes," as well as "average to high average cognitive ability." The doctor who completed Hurtado's mental residual functional capacity assessment concluded that she retained "adequate mental ability to carry out simple instr[uctions] and to relate adequately to others in a routine work setting."

Given the ALJ's hypothetical that Hurtado could perform only simple routine work, the VE believed that Hurtado could perform the fast food worker or mail clerk jobs. At her hearing, Hurtado did not object to the VE's testimony or qualifications, offer any evidence controverting the VE's testimony, or even question the VE. And the VE is an expert on the kinds of jobs a person can perform, *while the DOT simply provides generalized overviews of jobs and not the specific requirements of a job*. See SSR 00–4p; *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir.2004); *see also Jones*, 190 F.3d at 1230 (explaining that "[t]he DOT itself states that it is not comprehensive" and "the [Social Security Administration] itself does not consider the DOT dispositive"). So, the VE identified no jobs that went beyond Hurtado's RFC, even under the definitions in the DOT; and the ALJ did not err in relying on the VE's testimony.

Even assuming that an inconsistency existed between the VE's testimony and the DOT, the ALJ did not err by relying on the VE's testimony because it "trump[ed]" any inconsistent provisions of the DOT. *Id.* at 1229–30 (explaining that, if there is a conflict between the DOT and the jobs identified by a VE in response to the hypothetical question, the testimony of the VE "trumps" the DOT because "the DOT is not the sole source of admissible information concerning jobs"). (quotation omitted).

*Hurtado*, 425 F. Appx. at 795-96 (emphasis added).  Similarly, in *Leigh,* 496 F. Appx. at 974-75, the Eleventh Circuit held that the limitation of the claimant to "simple, routine tasks" did not conflict with VE testimony that the claimant could perform jobs of small parts assembler, ticket seller, and file clerk or office helper that had reasoning levels of 2 or 3. Courts within the Middle District have similarly found that there is no conflict where the VE testifies the claimant can perform jobs that had a reasoning level of 3 even though the ALJ limited claimant to "simple, routine, repetitive tasks." *See, e.g., Yuhasz v. Colvin*, No. 2:12-cv-427, 2013 WL 5532651, at *8-9 (M.D. Fla. Oct. 7, 2013); *Dickson v. Commissioner of Soc. Sec.*, No. 5:13-cv-48, 2014 WL 582885, at *3-5 (M.D. Fla. Feb. 13, 2014); *Lee v. Astrue*, No. 8:11-cv-463, 2012 WL 955227, at *2, 5 (M.D. Fla. Mar. 21, 2012).  Plaintiff does

not cite any cases to the contrary.  The fact that Plaintiff has supplied the opinion of a vocational expert espousing a conflicting opinion does not invalidate the professional opinion of the VE at the hearing, particularly in light of the cases cited above from this Circuit and District holding at least one of the exact same positions (small parts assembler) and a second position (warehouse checker) which Dr. Pinder agrees have a reasoning level of 2 (R. 247), are not in conflict with a limitation to "simple, routine, repetitive tasks." *See Leigh,* 496 F. Appx. at 974-75.  As such, the ALJ's decision was based on substantial evidence and the AC's denial of review and implicit rejection of Dr. Pinder's opinion was based on substantial evidence.

## IV.     RECOMMENDATION

For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.  Therefore, it is respectfully recommended that the administrative decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  If this Recommendation is adopted, the Clerk should be directed to enter judgment accordingly, terminate all pending matters, and close the file.

A party waives the right to challenge on appeal a finding of fact or conclusion of law adopted by the district judge if the party fails to object to that finding or conclusion within fourteen days after issuance of the Report and Recommendation containing the finding or conclusion

Recommended in Orlando, Florida on December 16, 2015.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record

-16-